## HENRY R. MENEFEE v. A. E. C. JOHNSON.

A principal is not bound by the act of an agent who exceeds his authority.

Where the petition prays for the rescission of a contract of sale or exchange, the plaintiff cannot be allowed either the price, or the value of the thing sold or exchanged. Restitution of the thing itself can alone be decreed.

Plaintiff cannot amend his petition so as to change his claim for the price of certain slaves, into an action for damages for defendant's failure to give them up in compliance with his contract. C. P. 419.

A prayer for a jury is too late after the case has been set for trial. C. P. 494, 495.

APPEAL from the District Court of the First District, *Buchanan*, J.

MORPHY, J. On the 5th of April, 1837, the parties to this suit entered into a contract by which the plaintiff agreed to give the defendant fourteen negroes, in exchange for two leagues and one labor of land, lying and being in the Republic of Texas, known by the name of John Lacy and Isaac Johnson's head rights, in Zavalla's colony or grant. It was further covenanted that, if the defendant should fail to execute to the plaintiff a good and sufficient title, clear of any and all claims whatsoever, then and in that case the negroes were to be given up by Johnson to one Samuel R. Browning, who, although he signed this contract only as a witness, became in reality a party to it, by agreeing to dispose of the negroes thus to be delivered to him for such lands as he might think proper for Menefee. On the same day and in pursuance of this contract, the defendant executed to the plaintiff two bills of sale for the two tracts of land given in exchange, in which they are more fully described, and to each of which tracts the price of $6798 75 was affixed and was mentioned to have been paid in cash by the petitioner Menefee. In each of these acts of sale, Johnson binds himself to give the plaintiff "*a good and sufficient warrantee title,*" as soon as he and the plaintiff, or the latter's agent or attorney, can arrive at San Augustin in Texas, or within three months from date. Immediately after the execution of these covenants, the fourteen negroes were delivered to the defendant who proceeded with them to Texas, accompanied by Samuel Browning as the agent of the plaintiff, for the purpose of giving actual possession of the land. On their arrival in Texas, Browning went

upon one of the leagues or tracts referred to in the agreement, which he found occupied by a claimant who, in the language of the witness, was resolute in maintaining his title and possession ; and he understood that the other league was possessed by a citizen of Texas, not less determined to maintain his possession and title. The defendant himself acknowledged his inability to give a clear title to the two leagues of land he was to convey to the plaintiff. Browning then called upon him, under the agreement, to re-deliver back to him the negroes. This Johnson refused to do, offering and insisting that he would convey other lands, in place of the two leagues for which he could not make out good titles. Browning, being unable to get the negroes, and believing, as he declares, that he could do no better for the interests of Menefee, accepted a bond of the defendant in the penal sum of $13,597 50, with the following condition : " Whereas I have this day, the 8th of June, 1837, agreed to make a good and sufficient title to two leagues and one labor of land, in place of the two leagues and one labor which I transferred to H. R. Menefee, lying in Zavalla's colony, &c.

" The condition of this obligation is such, that I do agree to locate two leagues and one labor on lands lying west of the Trinity, and, furthermore, I do on my part agree to clear out of the Land Office, at my own expense, the said two leagues and labor for the said H. R. Menefee, and perfect to him a good and sufficient title to the said two leagues and labor as soon as practicable."

Under these facts the judge of the District Court decided, that the original debt or claim of the petitioner was extinguished by novation, Browning having been, in his opinion, sufficiently authorized to accept an agreement for the sale of other lands, in place of those sold to plaintiff on the 5th of April, 1837. Judgment was accordingly rendered in favor of the defendant, from which this appeal has been taken.

We cannot acquiesce in the view taken of this case by the judge *a quo*. It is admitted that Browning had no other authority except that derived from the original contract between the parties. He is therein empowered to dispose of the negroes, if returned to him, for such lands as he may think proper for Menefee. This, in our opinion, authorized him to take other lands in Texas in exchange for the negroes, either from Johnson, or from any other

person ; but surely did not warrant him in taking defendant's promise, that good and sufficient titles would be made to the plaintiff, as soon as practicable, to other lands, not particularly pointed out or described. It is but reasonable to suppose that for the lands which Menefee authorized his agent to take for his negroes, he intended that he should have the same *good and sufficient warrantee titles*, which he had stipulated for from the defendant in the first agreement. By taking this bond, which actually conveyed to the plaintiff no lands in exchange for his negroes, Browning, in our opinion, exceeded his authority, and the plaintiff was not therefore bound by his act. His rights under the original contract are the same as though this new arrangement had not taken place. But the plaintiff, by his own pleadings, has raised an insuperable obstacle to his recovery. In his petition he represents the several agreements above spoken of as constituting a sale of the fourteen negroes for $13,597 50, which was to be paid by the conveyance of the two tracts of land ; and, after setting forth the facts of the case, he prays for judgment for that sum, with interest from the 5th of April, 1837. In a supplemental petition, filed shortly after, he prays that the contracts and agreements between himself and the defendants may be rescinded and annulled, and, as in the former petition, prays for judgment for $13,597 50, and for general relief. Now, whether the contract between these parties be a sale or an exchange, it is clear that, under a prayer to rescind it, we cannot allow the plaintiff either the price, or the value of the thing sold or given in exchange. The effect of the dissolution prayed for being to replace the parties in the situation in which they stood before the contract, a restitution of the negroes can alone be decreed, which is not prayed for by the petition. But even if, under the prayer for general relief, we were willing to allow the plaintiff the only thing he is entitled to under the pleadings, to wit, the restoration of his negroes, the evidence and circumstances of this case do not enable us to do it. Several of the slaves have died, and the record does not inform us how many, nor what are their names. Moreover, the surviving negroes being beyond the territorial jurisdiction of our courts, the judgment which we might render, while it would be inoperative and unavailing to the plaintiff, might be a bar to his action in damages against Johnson, should he find it his in-

terest to resort to such a remedy. The only judgment that we can render in the case, as it stands before us, is one of nonsuit.

The appellant, in his points, has drawn our attention to a bill of exceptions which he took to the refusal of the judge to allow him to file an amended petition long after the issue was joined, and after the case had been set for trial. The object of the amendment was to change the claim for the price of the negroes, into an action for damages sustained by reason of the defendant's failing to give up the slaves to the petitioner's agent according to his agreement. The judge was clearly right. The proposed amendment manifestly changed the ground upon which the suit had been brought. Code of Prac. art. 419. 5 Mart. N. S. 69. Another supplemental petition praying for a trial by jury was also rightfully excluded. It came too late, after the cause had been set for trial. Code of Prac. arts. 494, 495.

It is, therefore, ordered that the judgment of the District Court be avoided and reversed ; and that ours be for the defendant as in case of nonsuit, with costs in both courts.

*I. W. Smith,* for the appellant.

*Chinn,* for the defendant.